May it please the court, Gary Finn on behalf of the plaintiffs and appellants, Tomas Ceja and Susie Lidonis. Good morning, Your Honor. Your Honors, there is no dispute that my client Susie Lidonis was ordered removed in absentia in Texas on September 28, 1999. That's undisputed. We didn't file a lawsuit in the district court to challenge the finding of removability in absentia order against her. We filed a lawsuit in the district court to challenge the Citizenship and Immigration Services misinterpretation of a statute. That statute is U.S.C. 1182a6b, which, as you know, says that any alien who, without reasonable cause, fails to appear at a removal proceeding is inadmissible to the United States for five years. Let me see if I can recapitulate the essence of what I understand your argument to be. The standard for forbearance from entering an in absentia order is exceptional circumstances, a very, very high bar. But the standard for relieving someone of the removal order in the circumstance you describe as a lower bar, good cause. And so you're saying that applying essentially claim preclusion or issue preclusion is inappropriate. It's like, you know, beyond a reasonable doubt versus a civil suit. Is that the essence of your claim? That's very close, Your Honor. You have applied the wrong legal standard. Yes. The government in this case has assumed from the beginning, and apparently are still arguing today, that an in absentia removal order, if so facto, means that my client did not have reasonable cause to appear at her hearing. Where it actually means only that there were no exceptional circumstances. It means that there were no exceptional circumstances. It may mean that the client, my client, received. Well, factually, you didn't do anything about it, right? I mean, factually, when she was removed in absentia, it just went underground, correct? She was. And she stayed here, and then at some point they decided, okay, let's come. Her husband decided she needed to be an honorable woman or whatever, and they decided that she wanted to come out of the shadows and have a legal path to be a citizen. And so she went back to her country, and then they got an I-130, I guess, and then she couldn't get back, right? So that's where she is right now, right? She's in Guatemala, yes, Your Honor. And she's been gone, what, three years? Going on four years. Okay. Yes. Now, if she would have stayed here with the executive order now, and with her deportation, if she would have stayed here, then she wouldn't have been deported, right? Well, she would have been eligible for President Obama's program, yes, Your Honor. She would have. Well, his program, whatever it is, we don't really know what it is, but it would have meant that she had a deportation order out, right? Right. I mean, and so, and how long did she wait before she did anything about this? Well, she didn't move to reopen her in absentia removal proceedings until she was in Guatemala, and this section of the law. And how many years was that? Well, as soon as she got there, she went to an appointment at the consulate, the United States consulate in Guatemala City. Actually, she was found inadmissible only under the section of law that's waivable for being in the United States in unlawful presence. That's waivable. So we filed a waiver for that ground of inadmissibility, and when the waiver got to CIS, who adjudicates those waivers, CIS added another ground of inadmissibility. They said, oh, you're also inadmissible under 1182a6b for failing to appear at a removal proceeding. Right? So we knew that she had failed to appear at the removal proceeding, but we didn't think it was willful because she didn't know about that. Well, the notice was sent to her sister, right? Correct. But that was because she designated the sister's place, and she didn't correct it. And, of course, the sister, what, goofed up by not letting her know until after the hearing date had passed? That's right, Your Honor. That's right. But, I mean, is there any case law at all that you can cite that that's a reasonable ground, a reasonable cause to not appear? Well, see, under the old laws that existed before 1996, and there's some citations to this in my briefs, the standard for being able to reopen in an absentia deportation order, at that time it was deportation, would have been reasonable cause. So, and if you could show that you were unaware of the hearing, that would be a reasonable cause. Now, Congress, when they amended the law in 1996, made it more difficult to reopen in absentia orders because constructive notice provisions were added to the law. And, like I said at the beginning, I mean, we're not saying here that she didn't. You're not challenging the removal order directly. We're not. You're just challenging the way in which the waiver determination was made. Correct. And I will ask opposing counsel this question also. Is this a case that would benefit from our mediation program? I actually asked for mediation. I think the government opposed that. Was that before the executive order or after? Before. Well, we'll find out if the view has changed in a few minutes. Well, I'd be delighted. Let's assume if it went to mediation. What could the government do to give her an opportunity? I mean, could they let her come back and sit and not get deported, and then count that as their time for the five years? Well, I'd be delighted if they would, Your Honor. This family is a very nice family. They've been separated for four years. The mom is in Guatemala. How long was she here before she left for Guatemala? Twelve years. She has two young boys with her father, who's a U.S. citizen, with the children's father, her husband. And they're suffering tremendously. So I'd be delighted if the government was willing to. And she's already been in Guatemala for four years. If the government was willing to see the case go into mediation, I'd be happy about that. But by the terms, Your Honor, of Judge Callahan, the President's executive order, as I understand it, and it hasn't yet been implemented, but by its terms, I don't believe it would apply to a person who was outside of the United States on the day that President Obama made his announcement on November the 20th. So, unfortunately. So what would have to happen for her to have a pass? I mean, what could be mediated? Well, the government would have to agree to adjudicate her waiver application. In spite of 8 U.S.C. 1182a6b, the government, I think, would have to acknowledge that there is an exception. If a person did not ‑‑ if a person had reasonable cause for failing to appear. And that reasonable cause doesn't equal exceptional circumstances. No, it's a lower standard. I believe that my client, Susie Leodonis, could meet that standard because she didn't know about the hearing. Well, what about ‑‑ Even though maybe she should have known. What about Din V. Carey, where the Supreme Court granted cert? Does that ‑‑ could that have any effect on your client? Well, I guess if the government was to argue consular nonreviewability applies in this case, then it would because I think the Supreme Court is going to revisit that issue of the whole idea of consular nonreviewability. I don't believe it applies in this case because, well, for one thing, the district court didn't base its decision on consular nonreviewability. The district court said that we were attacking the removal order collaterally and that we can't do that. Also, I lost my train of thought. Maybe I should save the remainder of my time for rebuttal. You may do that. Certainly. Thank you very much. May it please the Court. Craig Defoe for the Federal Government. Good morning. Good morning. This Court should affirm the district court's dismissal of the case on one of three separate bases that we've argued here. First of all, this Court should affirm on the same ground that the district court dismissed this case, which is that 8 U.S.C. section 1252A5 and B9 preclude plaintiff's claim because their claim essentially is an indirect attack on the removal order. But it isn't. She's asking for a waiver of inadmissibility to return to the United States, acknowledging that there's a removal order against her. She's not actually seeking to change the removal order itself in any way, it seems to me. That's correct, Your Honor. It was sort of like if you're convicted of a crime, but then the crime then becomes the basis that people are they're taking your children away from you. Do you get a separate hearing for the removal of your children as opposed to your jury trial? I think you would. Well. I mean, that would be beyond a reasonable doubt for your jury trial, but then whether there would be entirely different factors that a court would be looking at. You could still be a criminal, but not be dangerous to your children. I think I understand the court's analogy, and we don't dispute that there is a different, albeit similar legal standard that applies for the reopening of the inadmissibility of the removal order versus determining whether or not a reasonable cause existed for Ms. Mejia to miss her removal proceeding. But I think the key here is that the factual analysis and the factual claim that the plaintiffs are making here really, if it were to be believed or approved by the court, would significantly undermine the rulings of the IJ and the BIA. I don't see how, because one can have good cause and yet not meet the exceptional circumstances test. It's like having the O.J. Simpson civil trial, which has a low standard of proof, versus the criminal trial, and the outcomes can be different. And it seems to me that just, you know, conflating those is not analytically sound. But what I'd like to ask you to focus on is the following question. Were the Petitioner in the United States, and I know she's not and you're not conceding anything, but were she here, would the executive order apply to her? She's not had a criminal record and was here for 12 years and et cetera, et cetera. Would she have been eligible had she not, in good faith, left the country to pursue this legal means of reentry? Here I was asking you if she had stayed in the United States. Yes. Would she be eligible? If she stayed in the shadows. Right. Instead of, like, going back and trying to straighten out her first illegal entry. Right. I can't say for sure whether or not that would apply. Why not? Well, because I don't know, for example, her criminal history. You don't know of any, right? And none has ever been in this record, right? So on this record she has no criminal history, right? That's right. I see none in this record. And she has U.S. citizen children, and she was here for many years. Is there anything else that, in your mind, would take her outside the executive order? There's nothing I can say for sure that would take her outside of that. Although I would also obviously caution that it is a, the executive order involves a deferred action, which would be essentially a purely discretionary function that would be judged on a case-by-case basis. Well, it would. You're just sort of looking at it. But we are dealing with people. All right? We're dealing with, I understand, I think, that you're sort of a champion of Mandel, that this has been your, a cause of yours where you're revitalizing that particular argument. But, you know, on the one hand she did something wrong by coming here illegally. But then on the other hand, all the people that never even came forward and tried to go back and tried to establish a legal way to come back, they have it better than, and I realize the law can have uneven consequences, but it does sort of come under the no good deed goes unpunished. Your Honor, I understand where you're coming from with that view. And I would also emphasize the fact that ultimately this, the inadmissibility ground at issue in this case is a five-year bar, and about 12 or 13 months from now it will no longer apply to Ms. Mejia and she would be able to. Well, that seems all the more reason to be willing to mediate, but I understand that the government's position before the executive order was that it was not willing to mediate. Was that a correct representation? Well, we spoke with the mediator. The government did not then and doesn't now see any way that mediation would resolve this case. When you say the government, is that you the government or is that you and your supervisors on up or what is that? Yeah, I'm speaking for me and my clients. Well, I know, but are you making that decision? Because sometimes we have attorneys that come here and they've made that decision and then if the court sends something to mediation, then they talk to their supervisors and we found that sometimes there's a different result. Well, the question of mediation hasn't come up before today in well over a year. So I can't say that it's something that I've discussed recently. So in fact then you don't know what the government's position is today with the executive order in place and how that might or might not affect the decision of how to handle this case. Well, that's not entirely correct. With regard to the executive order, as opposing counsel conceded, it would only apply to No, I understand that. But its potential effect on the government's willingness to mediate is what I was asking you about. Well, again, like I said, we haven't had specific discussions about mediation because the issue hasn't arisen. But I think that the jurisdictional issues that we're arguing here are really key to the resolution of this case. Well, they are. But sometimes after oral argument, based on the questions, we haven't conferenced on this or whatever. But you've heard two of the judges say, well, we're not sure the standard is exactly the same. We're not sure. You know, tell us why reasonable cause is the same as exceptional circumstances. And I haven't heard a really good answer on that. I don't know what the result's going to be at this point because we haven't conferenced. But by the same token, I think sometimes lawyers walk out of the courtroom feeling a little bit differently about their case than when they walked in the door. Sometimes they feel better. Sometimes they feel worse. And sometimes they don't read the tea leaves right either. Or we don't even know what the tea leaves are. I understand, Your Honor. And just to be clear, we're not arguing that exceptional circumstances is the same standard as reasonable cause. Like I was discussing earlier. I'm just thinking like, okay, what if, would it be, under the law, she was required to keep the government apprised of her address and the address she left with her sisters. So it would seem that she would have a really poor case, or I'm just saying that at this point, based on that, she didn't do what she was supposed to do. So trying to set something like that aside, I can see why she wouldn't be successful. But let's just say she goes in and someone believes her and says that her sister never told her about it. She falls on her sword and said, yes, I was, you know, I didn't do that, but my sister didn't tell me about it. I was here, or I was in the hospital, or by the time I found out, or I had, someone could think that that was reasonable cause for purposes of allowing her this opportunity to pursue. But not think it was a basis to set aside the removal order. I understand that, Your Honor, but there's a couple key items that that sort of analysis omits. Okay. First of all, USCIS engaged in that analysis and its decision, and it explained even that under the factors that it evaluated, including all the facts. Where in the record was there an adjudication of that there is no reasonable cause? You can find that it was the USCIS decision was attached to the complaint, and it's at the supplemental excerpts of the record, page 62 and 63. I mean, USCIS's decision certainly could have been a little clearer on that, but it engaged in a detailed analysis of the facts, and really one key fact that the plaintiffs haven't acknowledged at any point in this case is that there was a second notice to appear issued the same day as the first one. So plaintiffs are relying and putting all their eggs in the basket of this NTA where there was no time and date for the removal hearing that Ms. Mejia was scheduled for. But there was actually a second NTA, and I'm not sure why there was two that were processed, but they're identical in legal respects, except the second one actually has the time and the date and the place of the removal hearing, and that was the time and the date that the removal hearing actually took place. And there's a certificate of service on that, and that was acknowledged service by Ms. Mejia. She signed it, and also her thumbprint is on that. And so that's really been the key, I think, for... That's the sister, though. It's still the sister, right? No. No, you're right. That was personal service that was given to Ms. Mejia at the time that she was processed. She was personally served with the NTA that had the time and date, and also it was explained to her, you know, the consequences of failing to appear. Now, she's obviously alleging that there was a separate notice sent to her sister's address that she never got, but that ignores the fact that she got the actual notice at the time of processing. And plaintiffs sort of implicitly, I guess, dispute that because they don't acknowledge that fact, even though it's in the record, and I can cite, Your Honors, to it if you want it. But... What page? That's supplemental excerpts of record 2, page 4. You're saying she didn't even need to know that the other notice was sent to her sister because she had direct knowledge at the time? Absolutely, Your Honor. And that's the basis on which the IJ initially issued the in absentia removal and that the IJ and the BIA denied the motion to reopen it. That still doesn't really answer the question about good cause because, as Judge Callahan pointed out, we don't know because we have only this record, which is incomplete because it got dismissed. A person can get notice, not appear, and still have reasonable cause that doesn't rise to the level of exceptional circumstances. I'm not sure that I followed, Your Honors. Well, the fact that someone gets notice and then doesn't show up can support an in absentia removal order, but that doesn't necessarily mean they lacked good cause for their absence. If they get sick or their car breaks down or whatever, I'm speculating, obviously. So I'm not sure what that proves in this case. I'm sorry, Your Honor. I think even if we assume that under the facts alleged by the plaintiff, and even if you accept the fact that there's a separate NTA, I understand that, in theory, USCIS could have ruled that reasonable cause existed, and in theory they could have said that that inadmissibility ground does not apply to her. But that's not the analysis here. Of course, the Court's not doing a de novo analysis of whether or not reasonable cause existed. The Court's here, as we argue in the Mandel section of our brief, the analysis is limited to whether or not there's a facially legitimate and bona fide reason that USCIS gave. And I think that facially legitimate reason is in the record. It's in the complaint, and it's also because the USCIS decision is attached to the complaint. Your Honors can read it yourselves. But that, obviously, the Dinn decision and Bustamante indicate that that analysis for facial legitimacy is a very narrow analysis. Let me ask you this. Aside from the merits that we've been sort of talking about, the fact is the district court dismissed the case because of lack of jurisdiction, right, feeling that this was an indirect attack on removability, that then the appeal had to go directly to the court of appeals. But is the district court wrong on that? Because the plaintiff, it was what they were seeking in the district court was just to require the AAO to adjudicate on the merits. They weren't asking for the removal or the visa to be granted or the removal to be set aside. Am I right on that? Well, the AAO did rule. It considered the appeal from the denial of the waivers here. And so that decision's in the record. I mean, I think plaintiffs ---- Yeah, but the AAO says something about, well, there's no space on the USCIS form for reasonable cause determination, so we don't have jurisdiction. Right. I mean, it's a ---- Isn't that a little crazy? I think it's an intricate area of administrative law here. But essentially what the AAO said is that the USCIS office on the ground in Guatemala had the jurisdiction to consider and make that determination that that other removal But the AAO didn't have the jurisdiction to reevaluate the reasonable cause. Well, and what the appellate is seeking here, in my understanding, is correcting the USCIS's understanding of its authority under 1182A6B and compelling the agency to decide Mejia's application on the merits. Right? Isn't that what they're asking to have done? Your Honor, that is what they're asking to have done, although that has already happened. I see my time is up. Have you completed your answer to Judge Callahan's question? Yeah. Well, I just want to elaborate on it very briefly, Your Honor. Plaintiffs is asking for an adjudication on the merits, which I think essentially is what they're saying is they're asking for USCIS not to find Ms. Mejia inadmissible under that alternative ground and therefore to engage in the hardship analysis that typically would be engaged in in adjudicating a waiver application like this. The fact is USCIS considered the waivers here on the merits. They found, unfortunately, for Ms. Mejia that she was inadmissible under this non-waivable ground, and that's why it didn't end up engaging in the hardship analysis that otherwise would have been at issue. And so, Your Honor, just to conclude that. So were they right, or did they misunderstand their authority under 1182A6B? Our position is USCIS is correct, that its decision is lawful and properly applied to law, and ultimately found Ms. Mejia inadmissible for failure to attend her proceeding without reasonable cause. Thank you, counsel. Thank you. Thank you, Your Honors. Mr. Finn, you have some rebuttal time remaining. Thank you, Your Honor. USCIS's decision denying Susan Lee the waiver, I actually submitted a copy of it. It's in my expert record. It's at page 18 at the very bottom. The decision does mention in passing, I would say, the exception that exists under USC1182A6B, and the decision of the CIS says, an exception may be granted for reasonable cause for failure to attend such a hearing, referring, of course, to a removal hearing. The immigration judge ruled that there was no reasonable excuse for your failure to attend the removal proceedings. Well, that's not what the immigration judge ruled at all. We have a copy also at page 20 of the decision of the immigration judge, and the immigration judge ruled that the respondent failed to appear at her hearing and no exceptional circumstances were shown. So the immigration judge used a different standard, and then CIS, as I've been maintaining all along, misapplied that standard or believed that, incorrectly, that the immigration judge had ruled that there was no reasonable excuse. Well, but it looks like the AAO appears to have believed that the USCIS lacked jurisdiction to decide Mahia's applications because Section 1882A6B is not on agency forms. But it's not really clear to me what the AAO held and why. Okay. So from your perspective, what was the basis of the AAO's dismissal of Mahia's application for lack of jurisdiction? I have to be honest, Your Honor, I don't get it. I don't understand that. I mean, the AAO is there to review these decisions, and I really don't understand why they would think that they wouldn't have jurisdiction to review that issue. That issue is the CIS raised it in the first instance. As I said at the beginning, the consulate officers told my client, apply for your waiver. They didn't say that she was inadmissible for five years. They felt that she was inadmissible only for unlawful presence. When she went to CIS and submitted her waiver, CIS raised this ground of inadmissibility and said the immigration judge ordered you remove an absentia. They incorrectly say that the immigration judge ruled that you didn't have reasonable cause, which he never did. And perhaps that's why the CIS never really dealt with the issue of is there or is there not reasonable cause, that apparently they relied on the in absentia order, and they felt that the immigration judge had already been disposed of that issue, when, in fact, as I think the Court recognizes, that was under a completely different standard. You know, on page 7 of the district court's opinion, it says, although plaintiff's claims do not seek to invalidate the removal order, they do constitute an indirect attack. Do you agree with that or disagree with that? No, I disagree. I disagree. We're challenging a finding of inadmissibility based on a consular decision or a CIS decision, I should say, of inadmissibility. The CIS found my client inadmissible under statute. I think under the plain language of the statute, CIS has to analyze whether or not there was reasonable cause. CIS cannot just say, well, this person was ordered to remove an absentia. If so facto, there's no reasonable cause for her failure to appear. Congress didn't intend that to be the way it's supposed to work. If Congress had meant an in absentia removal order to automatically disqualify a person, then that's how they would have presumably written the statute. So if I understand your argument correctly, it is that even if you were to succeed in getting the agency to relook at the question of waiver, the in absentia order would remain valid. Yes. And the agency may very well find that there was no reasonable cause. But they have not yet conducted an analysis, a proper analysis of the question. They've relied only on a belief that an absentia order means no reasonable cause. Would she get to come back for that hearing? I believe that determination would be made that she would remain in Guatemala. That's why I don't know if the court has the power to order the case back into mediation, but if that was a potential ---- I was going to say we don't have ---- I thought you were going to say I don't know if the court has the power to order her to come back. I was going to tell you, no, we don't have that power. I was afraid of that. But if the court has the power just to say that maybe we should try to mediate it, I mean, that would be, for me, that would be acceptable. The poor lady has already been away from her children for four years, and, you know, is another year going to do the government any good? Is it going to do her children any good? I mean, her children need her back here. Forgive me for the emotional appeal, but ---- Well, it is about people, but the government can't be faulted for arguing the law as well as you cannot be faulted for that. So it's we're obviously not going to be making, you know, an emotional decision on this. We'll make it based on the law. Absolutely. I agree, and I understand that, Your Honor. But specifically, what you're legally asking is for us to ---- you want us to remand this case back to the district court and say, look, you do have jurisdiction because this is not an indirect attack, and I gather that then you'd want the district court to order, remand it back to the AAO to make a determination on the merits. Is that sort of what you're seeking legally? That's what I'm seeking legally. I think that's all I can seek. And perhaps even if we were to get a favorable ruling from the court, it would still be a year before we get back to adjudicating her waivers, and at that point it would be moot anyway. But I'm doing what I can for these people, and that's all I can do. Thank you, counsel. The case just argued is submitted, and we appreciate very much the thoughtful arguments from both counsel. They've been helpful. Thank you, Your Honor. Thank you.
judges: Gilman, Graber, Callahan